# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**VERONICA MILLER, et al.**     **PLAINTIFFS**

**V.**     **NO. 4:18-CV-254-DMB-JMV**

**CITY OF LELAND, et al.**     **DEFENDANTS**

## ORDER

Before the Court is (1) the defendants' "Motion for Summary Judgment for Claims Arising under State Law," Doc. #28; and (2) Kenny Thomas and Lisa Bush's "Motion for Qualified Immunity," Doc. #30.

## I
## Procedural History

On August 28, 2018, forty-four residents of Leland, Mississippi, filed a complaint in the Circuit Court of Washington County, Mississippi, against the City of Leland, Leland Light and Water Department, Mayor Kenny Thomas (individually and in his official capacity), Alderwoman Lisa Bush (individually and in her official capacity), and "Defendants A-D." Doc. #2 at 1. The complaint asserted state law claims regarding the City's maintenance and operation of its drainage system during an excessive rainfall event, which allegedly led to the flooding of the plaintiffs' properties. *Id.* at 6–11.

On December 10, 2018, the plaintiffs filed an amended complaint against the same defendants.[1] Doc. #10. The amended complaint dropped the state law claims and asserted claims under 42 U.S.C. § 1983. *Id.* On December 14, 2018, the defendants, asserting federal question

---

[1] The original complaint named "Leland Light and Water Department" in its caption and both "Leland Light and Water Department" and "Leland Water Department" in its body. The amended complaint did not include "Leland Light and Water Department" in its caption but named "Leland Water Department" in its introduction and "Leland Light and Water Department" in its listing of defendants.

jurisdiction, removed the state court action to the United States District Court for the Northern District of Mississippi.[2] Doc. #1 at 1.

On May 14, 2019, the plaintiffs,[3] all African American, filed a second amended complaint against the same defendants, Doc. #23, with leave of the Court, Doc. #22, asserting 42 U.S.C. § 1983 claims and state law claims. The second amended complaint contains two causes of action: negligence and "Civil Rights and Tortious Interference." Doc. #23 at PageID ##240–41. Specifically, the plaintiffs allege that (1) the City was negligent in its "operation, maintenance, repair, [and] upkeep" of the pump systems; its "hiring or contracting [of] qualified professionals to repair, maintain or supervise upkeep of the pump systems;" and "other acts;" (2) their 14th Amendment right to due process was violated by the defendants' failure "to protect [the plaintiffs'] property while protecting the property of White people;" (3) the City and Thomas violated their right to equal protection by "not turn[ing] pumps on in the 100% black areas of town," which resulted in "flooding in the black communities," while "the pumps were turned on in the predominantly white areas of town, allowing the water to divert as intended" and preventing

---

[2] There initially appeared to be an issue of whether this Court had subject matter jurisdiction since removal was based on a "proposed Amended Complaint. Doc. #1 at 2. Twenty-seven days after removal, the plaintiffs moved to amend their complaint to add federal claims "in order for this Court to have jurisdiction over the subject matter." Doc. #4 at 2. United States Magistrate Judge Jane M. Virden, by text order, ruled the motion moot on March 11, 2019, because "[t]he proposed amendment was filed separately as the Amended Complaint by the State Court Clerk on 12/10/18, *prior to removal*." (emphasis added). On April 24, 2019, the plaintiffs again moved to amend their complaint to add a negligence claim, stating that there was never a separately filed amended complaint in state court. Doc. #20 at 1.

Before removal, the plaintiffs, under Mississippi Rule of Civil Procedure 15(a), had the right to file an amended complaint since no defendant had then filed a responsive pleading; thus, their December 10, 2018, amended complaint was properly filed. Because the amended complaint asserted a claim arising under the Constitution, there is federal question jurisdiction.

[3] The plaintiffs named were Veronica Miller, Kathleen Smith, Linda Smith, Robert Smith, Twandolyn Sims, Rose Brooks, Ruthie Jones, Delois Taylor, Jeffrey Butler, Andrew Goodson, Denita Wilson, Harold Norals, Selmond Norals, Chardonnay Williams, Vivian Gaither, Kimberly Robinson, Wendell Thomas, Iman McClure, Deloris McWright, Mary Anderson, Irvisha Adams, Joe Frazier, Eartha Simmons, Jerdo Newsome, Dominique Cox, Lorenzie Smith, Queosha Williams, Emma Riggins, Marcus Flowers, Willie Mae Richmond, Florida Pittman, Lywanda Welton, Cornelius Davis, Pearlie Smith, Jimmy Whitley, Clara Jones, Matalean Jones, Richard Warren, Jessie Rainey, Rosetta Johnson, Cheryl Johnson, Miranda Carter, Tiffany Hite, and Linda Robinson. Doc. #2 at 1.

"flooding in the white communities;" and (4) Bush is liable for tortious interference with contract because she, "while acting on behalf of the city … encourag[ed] [the plaintiffs] to terminate their contract with [their counsel] and receive compensation from the city, without the consent or benefit of counsel." *Id.* As relief, the plaintiffs demand compensatory and punitive damages, together with costs and attorney fees. *Id.* at PageID #241–42.

On June 14, 2019, the defendants filed a "Motion for Summary Judgment for Claims Arising under State Law" ("State Law Motion"). Doc. #28. The same day, Thomas and Bush, both in their individual capacities, filed a "Motion for Qualified Immunity" ("Immunity Motion"). Doc. #30. The motions are fully briefed.[4]

## II
## Summary Judgment Standard[5]

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in

---

[4] Docs. ## 29, 31, 37, 39, 40, 41.

[5] It was initially unclear under what federal procedural rule the Immunity Motion was filed. The motion cites Rule 56 on its first page and later prays for relief under Rule 56. Doc. #30 at 1,2. Additionally, the supporting memorandum states Rule 56 as the standard. Doc. #31 at 7–8. Yet, as the plaintiffs point out in their opposing memorandum, in the movants' subsequent motion to stay discovery pending a decision on the Immunity Motion, they "refer[] to the Motion as a 'pre-answer motion under Fed. R. Civ. P[]. 12." Doc. #39 at 1. In reply, the movants confirmed that the Immunity Motion is a motion under Rule 56. Doc. #40 at 7–8. Thus, this Court reviews the Immunity Motion under the Rule 56 standard.

its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

## III
## Factual Background

On February 22, 2018, there was a storm in the City of Leland which resulted in extensive flooding throughout the City. Doc. #30-12 at 1; Doc. #30-2 at 1; Doc. #30-4. The City maintains an automatic water pumping system. Doc. #30-1 at 1; Doc. #30-5. However, on the day of the storm, the water did not reach the required threshold to automatically start the pump. Doc. #30-1 at 1. For that reason, Leland Mayor Kenny Thomas manually turned on the pump to provide immediate flood relief to the surrounding areas. *Id.* This allowed the water to drain, unobstructed, from the neighborhood where most of the plaintiffs reside. *Id.* at 1–2. Despite this, many Leland residents sustained flood damage to their homes. Doc. #30-12 at PageID #883.

Close to a month after the flood, the City and the Washington County Emergency Management Agency asked that any residents who sustained damage to their home from the flood fill out an assessment form made available to them, in an effort to gain financial assistance from the Mississippi EMA ("MEMA"). *Id.* The City also worked with the Delta Force Disaster Recovery ("DFDR") team to pursue financial assistance for residents. *Id.* At some point, Alderwoman Bush notified her constituents that grant money was available for those impacted by the flooding. Doc. #30-2 at 1. However, the plaintiffs' counsel instructed the plaintiffs not to communicate with the City or Washington County EMA. Doc. #30-12 at PageID #885. On March 20, 2018, Mayor Thomas signed a Proclamation of Local Emergency, allowing Washington County EMA to submit to MEMA a list of 40 flood-damaged homes. *Id.* at PageID #884. Funds for repairs were secured through both MEMA and DFDR and other groups. *Id.* at PageID #890.

**IV**
**Analysis**

The Court will first address the State Law Motion and then the Immunity Motion.

**A. State Law Motion**

The defendants seek dismissal of all state law claims asserted against them on the grounds that they are barred by the Mississippi Tort Claims Act ("MTCA").[6]

As a general rule, "[t]he MTCA is the exclusive remedy against a governmental entity or employee pursuant to its specific terms." *Lefoldt ex rel. Natchez Reg'l Med. Ctr. Liquidation Tr. v. Rentfro*, 853 F.3d 750, 753 (5th Cir. 2017). The MTCA provides that:

> the "state" and its "political subdivisions," … [are] immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions.

Miss. Code Ann. § 11-46-3.

**1. The City**

In their second amended complaint, the plaintiffs allege:

> The City was negligent in its operation, maintenance, repair, upkeep, training of employees, negligent in hiring or contracting qualified professionals to repair, maintain or supervise upkeep of the pump systems and other acts of negligence to be shown in discovery and at trial.

Doc. #23 at PageID #240.

---

[6] The defendants represent in passing that "the time line here appears to run into the issue of both lack of proper notice and an untimely suit under Miss. Code Ann. §11-46-11 for any relevant official conduct and an untimely suit under Miss. Code Ann. §15-1-35 for conduct which appears to fall outside the MTCA for which no individual capacity claim has been made." Doc. #29 at 5. The defendants do not explicitly represent, however, that they did not receive the notice required under § 11-46-11. Further, the defendants do not elaborate on the argument in the rest of their 19-page memorandum brief, nor in their reply brief. Thus, to the extent the defendants attempt to claim there was an issue of notice, the Court deems the argument waived. Further, the Court does not find the suit untimely under the MTCA as the plaintiffs filed suit within the one-year statute of limitations (the event from which the claims arise occurred on or about February 22, 2018, and the plaintiffs' initial complaint was filed on August 28, 2018). *See* Miss. Code Ann. § 11-46-11(3)(a).

The City asserts immunity, under the MTCA, from the plaintiffs' negligence claims. It contends that it cannot be liable because it performed a discretionary function, pursuant to Miss. Code Ann. § 11-46-9(d), and because it is entitled to weather immunity, pursuant to Miss. Code Ann. § 11-46-9. The plaintiffs argue that while the implementation and operation of the pump system may have been discretionary, the City failed to maintain the system.

In *Wilcher v. Lincoln County Board of Supervisors*, the Mississippi Supreme Court held that its original public-policy functions test, adopted by the court in *Jones v. Mississippi Department of Transportation*,[7] was the proper test to apply in a discretionary-function analysis. 243 So. 3d 177, 180 (Miss. 2018). The public-policy function test requires the court to perform a two-pronged analysis, determining (1) "whether the activity in question involved an element of choice or judgment;" and (2) "whether that choice or judgment involved social, economic, or political-policy considerations." *Wilcher*, 243 So. 3d at 188. "Only when both parts of the test are met does a government defendant enjoy discretionary-function immunity." *Id.* Under this test, a court "must distinguish between *real policy* decisions implicating governmental functions and *simple acts* of negligence that injure citizens." *Reverie Boutique LLC v. City of Waynesboro*, 282 So. 3d 1273, 1280 (Miss. Ct. App. 2019). Because discretionary immunity is an affirmative defense, a defendant has the burden of proving its applicability. *Doe v. Rankin Cty. Sch. Dist.*, 189 So. 3d 616, 620 (Miss. 2015) (discretionary immunity affirmative defense); *R.J. Reynolds Tobacco Co. v. King*, 921 So. 2d 268, 272 (Miss. 2005) ("The burden rests upon the defendant, not the plaintiff, to prevail on an affirmative defense.").

In the wake of *Wilcher*, it is clear that the MTCA does not automatically bar claims for negligence related to a municipality's day-to-day operation and maintenance of a sewer system.

---

[7] 744 So. 2d 256, 262 (Miss. 1999).

*Reverie*, 282 So. 3d at 1283 (Wilson, J., concurring). Rather, such claims fall outside discretionary immunity when they are based on "some specific ordinary negligence of the City's public works employees …." *Id.* (quotation marks omitted).

Here, beyond broadly referencing "operation," "maintenance," and "upkeep," the City has made no effort to identify the *specific* conduct for which it is asserting discretionary immunity. Accordingly, the Court cannot conclude the conduct involved "real policy decisions," rather than "simple negligence." Therefore, summary judgment on the issue of discretionary immunity is inappropriate at this stage with respect to the negligence claims premised on the operation, maintenance, and upkeep of the water pump.

However, post-*Wilcher*, the Mississippi Supreme Court has held that the hiring, supervision, and training of employees is a discretionary function subject to immunity. *City of Clinton v. Tornes*, 252 So. 3d 34, 39–40 (Miss. 2018). Accordingly, the Court finds the City to be entitled to discretionary-function immunity as to the plaintiffs' claim that it was negligent in that regard.

Finally, the City asserts that it is entitled to weather immunity. The weather immunity provision of the MTCA prohibits liability from claims "[a]rising out of an injury caused solely by the effect of weather conditions on the use of streets and highways." Miss. Code Ann. § 11-46-9(q). By its terms, weather immunity is reserved for torts arising from injuries caused by weather conditions on the use of roadways, not weather conditions affecting sewage systems. *Id.* Thus, the City is not entitled to weather immunity.

### 2. Bush

Bush asserts immunity, both in her official and individual capacity, from the plaintiffs' claim of tortious interference with a contract. She argues that the plaintiffs fail to allege how "an

Alderwoman notifying her constituents of available grant money for flooding victims was an act of malice to these Plaintiffs;" that the plaintiffs fail to allege she "acted in a manner that was calculated to cause damages to the Plaintiffs;" and that "there is no allegation that any of [the] Plaintiffs breached their contract with opposing counsel." Doc. #29 at 8–9. In response, the plaintiffs argue that "[t]he alleged interference caused the affected Plaintiffs to exert unnecessary time and effort, experience emotional distress, and delay any remedial efforts as they received inappropriate direct contacts from and [sic] opposing party while represented by Counsel." Doc. #37 at 10–11.

> Under Mississippi law, the elements of tortious interference with a contract are:
>
> 1. that the acts were intentional and willful;
> 2. that they were calculated to cause damage to the plaintiffs in their lawful business;
> 3. that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and
> 4. that actual damage and loss resulted.

*Rex Distrib. Co. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 452 (Miss. 2019).

The plaintiffs fail to allege the actual damage and loss they suffered. "[A]n essential element is that the plaintiff[s] suffer some damage or loss." *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 304 F. Supp. 3d. 514, 523 (N.D. Miss. 2018).

The plaintiffs allege that "Bush, while acting on behalf of the city, made personal phone calls and text messages to the plaintiffs encouraging them to terminate their contract with the undersigned and receive compensation from the city, without the consent or benefit of counsel." Doc. #23 at PageID #241. Yet the plaintiffs do not represent that any contracts with counsel were actually breached. "An action for tortious interference with contract ordinarily lies when [the interference] caus[es] one party not to perform and result[s] in injury to the other contracting

party." *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999). While the plaintiffs claim that they "exert[ed] unnecessary time and effort" and suffered emotional distress, they do not cite any support for their contention that these are considered actual damage and loss. Nor has the Court found any support for this contention. Further, the plaintiffs do not specifically allege what remedial efforts were delayed and how successful these efforts would have been had Bush not contacted the plaintiffs. As the plaintiffs have failed to demonstrate that any actual damage and loss resulted, their claim of tortious interference fails. Accordingly, there is no need for the Court to review Bush's defense of immunity. Summary judgment on the claim of tortious interference with a contract is granted.

## B. Immunity Motion

In the Immunity Motion, Thomas and Bush ask the Court to dismiss the plaintiffs' federal claims against them in their individual capacity as they are protected by qualified immunity.

The Fifth Circuit has provided that:

Our two-step qualified-immunity inquiry determines whether a plaintiff has shown: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. Generally, the Court exercises its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand.

*Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) (quotation marks omitted).

### 1. Due process

The plaintiffs, all African American, allege that their Fourteenth Amendment rights to due process were violated by the movants' failure to protect the plaintiffs' property while protecting the property of white Leland residents. As the movants have asserted the defense of qualified immunity, the burden is now on the plaintiffs to demonstrate why the movants should not be entitled to qualified immunity. The plaintiffs have failed to meet their burden.

When a plaintiff pleads claims but does not address those claims in its response to a motion for summary judgment, those claims are deemed waived. *Bluitt v. Wal-Mart Stores East, LP*, No. 1:17-CV-218, 2019 WL 3254792, at *3 n.7 (N.D. Miss. July 19, 2019). The plaintiffs' response fails to address the movants' assertion of qualified immunity regarding the due process claim. Moreover, the second amended complaint only fleetingly mentions a due process claim, failing to allege specific facts demonstrating that there was a clearly established due process right and that the movants acted objectively unreasonably. Because the plaintiffs do not address the movants' qualified immunity arguments regarding the due process claim, such claim is deemed waived.

**2. Equal protection**

The plaintiffs also allege that their Fourteenth Amendment right to equal protection was violated by Thomas due to his failure to turn on "pumps … in the 100% black areas of town," which resulted in "flooding in the black communities." Doc. #23 at PageID #241. In contrast to their due process claim, the plaintiffs' brief contains arguments against Thomas' assertion of qualified immunity on their equal protection claim. However, their arguments do not overcome Thomas' qualified immunity defense.

Because this Court has discretion to determine which prong of the qualified immunity inquiry to address first, this Court will first determine whether the right that was allegedly violated was clearly established at the time of the incident. The plaintiffs cite only one Fifth Circuit opinion as argument, *Hawkins v. Town of Shaw*, 437 F.2d 1286 (5th Cir. 1971). In *Hawkins*, the Fifth Circuit held that African American residents of Shaw, Mississippi, had a right to, among other things, a drainage system equal to that of the white residents of Shaw. *Id.* at 1292. In Shaw, the drainage system in the white community was superior to that in the African American community, having "underground storm sewers or a continuous system of drainage ditches," while the black

neighborhoods only had a "poorly maintained system of drainage ditches and, on many streets, none at all." *Id.* at 1290–91. *Hawkins* holds that there is a clearly established right to equal drainage systems among black communities and white communities.

The Court thus moves to the second prong of the qualified immunity inquiry, determining whether the clearly established right was violated. The Court finds that it was not. The plaintiffs claim that their right to equal protection was violated by Thomas failing to turn on the pump for the black neighborhood of Leland, where the plaintiffs live. Thomas represents that "the water had not reached the threshold to automatically start the pump" and "[o]ut of an abundance of caution [he] manually turned the pump on in order to provide immediate flood relief in the surrounding areas." Doc. #30-1 at 1. The plaintiffs do not introduce any facts to rebut this assertion.

When the plaintiffs requested Rule 56(d) relief in order to conduct discovery on this issue, the Court gave them the opportunity to revise their procedurally and substantively deficient request; however, the plaintiffs' revised request also failed to demonstrate how additional discovery would create a genuine issue of material fact. *See* Doc. #53. Because the plaintiffs have not presented facts demonstrating that Thomas violated their right to equal protection, the Court finds Thomas is entitled to qualified immunity.

## V
## Conclusion

For the reasons explained above:

1. Thomas and Bush's Immunity Motion [30] is **GRANTED**. The plaintiffs' due process claim against Thomas and Bush in their individual capacities is dismissed. The equal protection claim against Thomas in his individual capacity is dismissed.

2. The defendants' State Law Motion [28] is **GRANTED in Part and DENIED in**

11

**Part**.[8] The motion is GRANTED to the extent the following claims by the plaintiffs are dismissed: the claim that the City was negligent in its training, hiring, or contracting, and the claim against Bush for tortious interference with contract. The motion is DENIED in all other respects.

**SO ORDERED**, this 31st day of March, 2020.

/s/Debra M. Brown  
**UNITED STATES DISTRICT JUDGE**

---

[8] In the concluding paragraph of their initial memorandum, the defendants ask that, "[t]o the extent this state law intentional tort is allowed to survive dismissal, [they] pray for limited discovery in the same manner as an individual defendant seeking qualified immunity under federal law" citing Local Rule 16(b)(3)(B). Doc. #29 at 18. As provided in the rule, "[w]hether to permit discovery on issues related to the motion … are decisions committed to the discretion of the court." L.U. Civ. R. 16(b)(3)(B). Discovery was stayed by United States Magistrate Judge Jane M. Virden on June 17, 2019, pending a decision by this Court on the Immunity Motion. Doc. #33. Because the Immunity Motion has been decided by this order, the stay on discovery will be lifted regardless.